# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

| | |
|---|---|
| MARGARET GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-cv-01083-NKL |
| ) | |
| CAROLYN W. COLVIN ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Margaret Gordon seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

### I. Background

#### A. Gordon's Medical History

Gordon has a long history of psychiatric treatment for anxiety and depression. In 2004, Gordon began receiving treatment from Dr. Nabil El-Halawany. [Tr. 280-282]. Dr. El-Halawany diagnosed Gordon with generalized anxiety disorder and dysthymic disorder. [Tr. 282]. Between January 2006 and May 2012, Gordon saw Dr. El-Halawany at least sixteen times, during which time the doctor noted variations in Gordon's symptoms and demeanor. [Tr. 269-279, 307-309, 327-335, 337-348]. For example, in January 2006 Dr. El-Halawany prescribed Gordon Prozac and Xanax. [Tr. 279]. He noted that Gordon felt depressed and unmotivated and that she stated she often slept all

day in bed. [Tr. 279]. At an appointment in July 2007, Gordon complained of uncontrollable crying. [Tr. 274]. In May and July 2010, Gordon stated that she was sad, depressed, and feeling angry at everyone. [Tr. 307-308]. Most of the records between 2006 and 2012 were accompanied by notes stating that Gordon's hygiene and grooming were fair, she had no thoughts of suicide or homicide, and that her symptoms were being controlled by medication.

In August 2010, Dr. El-Halawany completed a Mental Medical Source Statement. [Tr. 255-258]. The doctor noted that Gordon had marked limitations in her ability to cope with stress, function independently, behave in an emotionally stable manner, maintain reliability, interact with the general public, accept instructions, respond to criticism, understand and remember simple instructions, maintain concentration and attention for extended periods, sustain an ordinary routine without special supervision, work in coordination with others, make simple work-related decisions, perform at a consistent pace, and respond to changes in a work setting. *Id.* He also stated that Gordon's impairments would cause unpredictable work interruptions and chronic absences. *Id.* He concluded his statement noting "patient needs disability." [Tr. 258].

In January 2010, Gordon saw DDS consultative examiner Dr. Robert Pulcher. [Tr. 284-288]. Dr. Pulcher diagnosed Gordon with Depressive Disorder NOS and Generalized Anxiety Disorder NOS. *Id.* He stated that Plaintiff might be able to return to some type of work "with close supervision." Tr. at 287. That same month, agency reviewing psychologist Dr. Kenneth Burstin completed a Mental Residual Functional Capacity form. [Tr. 291-293]. He stated that Gordon had moderate limitations in her

2

ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. *Id.* He noted that Gordon could adapt to changes in settings which did not include frequent public contact or close interaction with others. *Id.*

In addition to mental health treatment, Gordon has undergone treatment and evaluation for arthritis and diabetes. In July 2010, Gordon saw Michelle Hirsch, FNP, for evaluation of joint swelling and pain in both of her hands. [Tr. 316-317]. Hirsch assessed Gordon with multiple joint pain with suspected rheumatoid arthritis. *Id.* In August 2010, Gordon underwent a sonogram that disclosed an enlarged, fatty infiltrated liver. [Tr. 311].

## B. ALJ Decision

The ALJ denied Gordon's request for disability benefits, concluding that Gordon had the Residual Functional Capacity (RFC) to engage in substantial gainful activity. The ALJ concluded that despite Gordon's severe impairments of depression, anxiety, and recent diagnosis of diabetes mellitus, she retained the following RFC:

> [T]o perform medium work as defined in 20 CFR 404.1567(c) including lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, standing and walking eight hours of a workday, and sitting eight hours of a workday. Mentally, she is limited to repetitive work with no detailed tasks or instructions, and she cannot have interaction with the public and only occasional interactions with co-workers.

[Tr. 22-23]. He then relied on vocational expert testimony to conclude that Gordon could achieve employment as a stubber, lab equipment cleaner, or industrial cleaner. [Tr. 26].

3

In determining Gordon's RFC, the ALJ accorded significant weight to consultative examiner Dr. Pulcher's mental status examination and his observed mild to moderate signs and findings. [Tr. 25]. He did not accord significant weight to Dr. Pulcher's conclusions that Gordon was limited to part-time work or work requiring close supervision. *Id.* The ALJ also assigned weight to reviewing psychiatrist Dr. Burstin's conclusion that Gordon could adapt to changes in settings not requiring frequent public contact or close interactions with others. *Id.* In evaluating treating physician Dr. El-Halawany's opinion the ALJ noted that he could not "give great weight to this opinion as it is not supported by the underlying treatment notes which consistently state that claimant is doing well, is functional, and stable, all of which supports a much higher functioning than opined by Dr. El-Halawany." [Tr. 24].

## II. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Gordon argues that the ALJ's decision not to accord great weight to the opinion of treating physician Dr. El-Halawany is not supported by substantial evidence. The Court disagrees.

The Code of Federal Regulations (CFR) sets out several factors to be considered by the ALJ in evaluating and weighing doctors' opinions, including (1) the existence of an examining relationship, (2) the existence of a treating relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the person rendering the opinion, and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c). A treating source's opinion must be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

Based on his treatment of Gordon, Dr. El-Halawany concluded that she was markedly limited in her ability to function, and would be unable to sustain substantial gainful activity. Dr. El-Halawany's opinion is inconsistent with the medical evidence in the record. Gordon's treatment records from Dr. El-Halawany indicate that she was generally stable and faced severe psychological problems only when confronted with "stressors." For example, in February 2004, Dr. El-Halawany conducted a medical status examination and found that Gordon appeared oriented, was cooperative, had goal-directed speech, no cognitive impairments, and no thoughts of suicide or homicide. [Tr.

5

282]. In 2006, despite being unemployed and facing financial difficulties, Gordon reported that her mood was stable and denied thoughts of suicide or homicide. [Tr. 276-277]. In June 2008, Dr. El-Halawany noted that Gordon was "functioning very well," "healthy" and had an appropriate affect. [Tr. 272]. In 2009, Gordon's sister committed suicide, but despite a sad affect and depressed mood during her visits to Dr. El-Halawany throughout the year, she did not appear violent and had no thoughts of suicide or homicide.

The ALJ found that Gordon's statements about the effects of her symptoms were not entirely credible, in that no evidence supported Gordon's complaints of disabling mental or physical impairments. [Tr. 25]. The record suggests that Gordon's symptoms were well controlled by medication. For example, in 2006, Gordon visited Dr. El-Halawany and reported feeling depressed, having crying spells, sleeping all day, and being unable to keep a job. [Tr. 279]. Rather than completing a mental status examination or making objective findings regarding Gordon's mental status, he prescribed Prozac and Xanax. *Id.* The doctor proceeded similarly in May 2012, when Dr. El-Halawany noted that Gordon's depression had responded well to a low dose of Prozac in the past, and in response to Gordon complaint of increased depression only recommended that Gordon increase her dosage of Prozac and supplement with Xanax. [Tr. 342].

Because the record must be evaluated as a whole, "[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician

6

renders inconsistent opinions that undermine the credibility of such opinions." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 790). In this case, Dr. El-Halawany's conclusion that Gordon is severely limited and "needs disability" is not supported by the evidence of the record that suggests that Gordon's mental and physical limitations were only moderate and were largely controlled by medication. Therefore, the evidence supports the ALJ's decision to disregard Dr. El-Halawany's opinion.

The ALJ's reliance on the opinions of Drs. Pulchar and Burstin is also supported by substantial evidence of the record. Gordon's medical records and the doctors' opinions support the conclusion that Gordon has only mild to moderate limitations. Gordon's concentration and memory are intact, indicated by Gordon's ability to remember two out of three items after fifteen minutes during a mental evaluation. [Tr. 284]. She is also able to attend to her personal care, prepare simple meals, mow the yard, and do laundry. [Tr. 59, 208-209]. These abilities all support the ALJ's RFC determination that Gordon is capable of moderate work. In order to accommodate for her impairments, the ALJ limited Gordon's RFC based on some of Dr. El-Halawany's opinions. The ALJ included in the RFC that "[m]entally, [Gordon] is limited to repetitive work with no detailed tasks or instructions, and she cannot have interaction with the public and only occasional interactions with co-workers." [Tr. 22-23]. This limitation incorporates Dr. El-Halawany's statement that Gordon had difficulty interacting with the general public and working in coordination with others. [Tr. 257]. The ALJ's RFC

determination is supported by substantial evidence of the record and justifies the ALJ's decision to deny Gordon benefits.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  November 5, 2014
Jefferson City, Missouri